HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

YOVONNE L GARDNER-ANDERSON,

    Plaintiff,

v.

CAROLYN COLVIN,

    Defendant.

CASE NO. C14-5473 RBL

ORDER

THIS MATTER is before the Court on Plaintiff Yovonne Gardner-Anderson's petition for judicial review of the Commissioner of Social Security's final administrative decision that she is not disabled. The ALJ determined that Anderson has significant impairments that prevent her from performing her past relevant work, but that she was capable of performing other jobs that existed in significant numbers in the national economy on the date she was last insured. After reviewing the parties' briefs and the record, the defendant's decision to deny benefits is **AFFIRMED**.

### I. BACKGROUND

**A.     Procedural Background**

In 2001, Anderson was involved in two vehicle accidents. After the accidents, Anderson developed multiple medical issues. She filed an application for disability insurance benefits in

May of 2009. The ALJ issued a decision in February of 2011 finding that she was not disabled and denying her application. The Appeals Council upheld the decision, but after Anderson sought judicial review in this Court, the parties stipulated to remanding the matter back to the ALJ for further consideration.

On remand, the ALJ held another hearing and again found that Anderson is not disabled and denied her application for benefits. The Appeals Council denied plaintiff's request for review, which made the ALJ's decision the Commissioner's final decision.

Anderson timely filed this action for judicial review of the Commissioner's decision, which is now ripe for review. Anderson argues that the ALJ erred by failing to consult a medical expert regarding the onset date of her alleged disability, by failing to consider medical evidence from after the date she was last insured, and by not fully crediting her and other lay witnesses' testimony.

## II.  DISCUSSION

### A.  Standard of Review

The Commissioner's decision must be upheld if it is supported by substantial evidence and the proper legal standards have been applied. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Commissioner of Social Security Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence

admits of more than one rational interpretation," the Commissioner's decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

### B.      Disability Determination

To be entitled to disability insurance benefits, a claimant must have been disabled on or before his or her last date insured. *Flaten v. Sec'y of HHS*, 44 F.3d 1453, 1460–65 (9th Cir. 1995). A five-step "sequential evaluation process" is used to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. The claimant bears the burden during steps one through four, but the burden shifts to the Commissioner at step five. *Hoffman*, 785 F.2d at 1424-25.

At step one, the claimant must show that he or she is not engaged in substantial gainful activity. *See* C.F.R. § 404.1520(b). At step two, the ALJ must determine whether the claimant suffers from "severe impairments" within the meaning of the regulations. *See* C.F.R. § 404.1520(c). At step three, the claimant can conclusively establish that he or she is disabled by showing that any of his or her impairments equal one of the impairments listed in Appendix 1 to 20 C.F.R. § 404. *See* 20 C.F.R. § 404.1520(d). If the claimant is unable to do so, then at step four, the ALJ must determine whether the claimant is able to perform his or her past relevant work.[1] *See* 20 C.F.R. 404.1520(f). If unable to perform past relevant work, then the claimant must be found to be disabled unless, at step five, the ALJ concludes that he or she can perform other work in the national economy. *See* 20 C.F.R. 404.1520(g). Whether the claimant can perform past relevant work or other work in the national economy is based on the claimant's residual functional capacity. The residual functional capacity is what the claimant can still do

---

[1] Past relevant work is defined as work that the claimant has performed in the past 15 years. *See* 20 C.F.R. § 404.1520(f).

despite his or her medical impairments. Social Security Ruling ("SSR") 96-8p, 1996 WL 374184.

Anderson's last date insured was June 30, 2008. To be entitled to insurance benefits, Anderson had to show that she was disabled prior to that date. The ALJ found that Anderson had several severe impairments, including spinal stenosis; back, neck, shoulder, and hip pain; gastrointestinal disorders; and hypertension. The dispute in this case is over how debilitating those impairments were on Anderson's date last insured.

The ALJ found that in June of 2008, Anderson had the residual functional capacity to perform sedentary work, with some restrictions. Based on that finding, the ALJ found that Anderson could not perform her past relevant work. Nevertheless, he concluded that Anderson was not disabled because other jobs existed in significant numbers in the national economy that she could have performed.

Anderson claims that the ALJ underestimated how debilitating her symptoms were. She argues that the ALJ erred by: (1) failing to call a medical expert to establish her disability onset date; (2) failing to consider medical evidence from after her date last insured; (3) rejecting her account of her symptoms; and (4) rejecting her friends and family's account of her symptoms.

### 1. The ALJ was not required to call a medical expert

Citing Social Security Ruling 83-20 and cases that have interpreted that ruling, Anderson contends that the Commissioner's decision must be reversed because the ALJ failed to call a medical expert at the administrative hearing to help determine the onset date of her disability. Anderson claims that the ALJ acknowledged at the second administrative hearing that her condition had appreciably worsened. Anderson argues that because the ALJ found that she was limited to sedentary work with restrictions, any worsened condition is substantial evidence that she became disabled at some point, and a medical expert was required to help establish when.

Anderson misinterprets SSR 83-20. Social Security Ruling 83-20 describes the relevant evidence to be considered when establishing a disability onset date. According to SSR 83-20, if it can be reasonably inferred that the onset date of a disabling impairment was some time *prior to* the first recorded medical examination, then the ALJ must call a medical expert to establish a medical basis for that inference. That is so because a disability determination must be based only on limitations attributable to medically determinable impairments. *See* 20 C.F.R. § 416.929(b); SSR 96-8p. When a claimant suffers from a disabling impairment for some time before going to a doctor, the medical expert helps the ALJ determine how long the claimant suffered from the impairment before being diagnosed. That does not mean that a medical expert is required whenever the medical evidence does not establish the precise date that an impairment became disabling.

When, like here, the contended onset date does not pre-date medical examinations, a medical expert is unnecessary. Rather, the ALJ can determine the onset date based on the evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.") Because the dispute is not over how long Anderson suffered from her impairments before being diagnosed but, rather, at what point after being diagnosed her impairments worsened to such a degree that they became disabling, the ALJ did not err by failing to call a medical expert.

**2.      The ALJ properly considered all of the evidence in the record**

Anderson next argues that the Commissioner's decision must be reversed because the ALJ did not consider all of the medical evidence from after her date last insured. Her argument is based on the assumption that the ALJ did not consider any of the evidence that he did not discuss in the decision. In fact, the ALJ's decision states that, "After careful consideration of the *entire*

*record*, I find that through her date last insured of June 30, 2008, the claimant had the residual functional capacity to perform sedentary work . . . ." (emphasis added). While explaining that finding, the ALJ specifically discussed medical tests from after Anderson's date last insured.

While an ALJ must explain why significant probative evidence has been rejected, he does not have to discuss *all* of the evidence in the record. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). Anderson complains that the ALJ discussed medical records that supported his conclusion but did not discuss a handful of medical tests from after her date last insured that she thinks supports her claim. But none of the records that Anderson identifies clearly relate back to her condition on the date she was last insured, so they were not probative of the ALJ's inquiry and did not have to be discussed. The records that Anderson cites to confirm that she suffered from the impairments that the ALJ found she suffered from and that her condition progressively worsened after June of 2008. None of the records, however, clearly bear on how debilitating Anderson's symptoms were on her date last insured.

The ALJ did not err by failing to consider all of the evidence in the record because it is apparent that the ALJ did consider evidence from after Anderson's date last insured and none of the records that he did not discuss are clearly significant or probative.

### 3. The ALJ sufficiently explained why he rejected of some of Anderson's and other lay witnesses' testimony

Lastly, Anderson contends that the Commissioner's decision must be reversed because the ALJ erred in assessing her credibility and in rejecting lay witness testimony. An ALJ must give "specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). To reject lay witness testimony, an ALJ must give germane and specific reasons supported by substantial

evidence. *Lewis v. Apfel*, 236 F.3d 503, 511-12 (9th Cir. 2001). The ALJ can use "ordinary techniques" of evaluating credibility. *Molina*, 674 F.3d at 1112.

Here, the ALJ extensively explained why he found that Anderson's account of her symptoms were not credible. He discussed Anderson's medical records at length and how Anderson's testimony conflicted with the evidence in the record. He also cited the generally conservative nature of Anderson's treatment and the treating doctors' reports that she had displayed symptom magnification during examinations. Regarding the testimony from Anderson's friends and family, the ALJ cited to the same medical evidence that contradicted their statements and also noted that several of the statements described Anderson's condition after her date last insured. Accordingly, the ALJ sufficiently justified his decision to disregard some of Anderson's and her family's testimony.

### III.   CONCLUSION

The ALJ's decision is supported by substantial evidence and applied the correct legal standards. He did not err by failing to call a medical expert, by not discussing *all* of the evidence from after Anderson's date last insured, or by evaluating Anderson's and lay witnesses' testimony. Accordingly, the Commissioner's decision to deny benefits is **AFFIRMED.**

IT IS SO ORDERED.

Dated this 1st day of June, 2015.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE